IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDY N. WEBB,

    *Plaintiff*,

    v.                              Civil Action No. ELH-11-2105

GREEN TREE SERVICING, LLC,

    *Defendant*.

**MEMORANDUM OPINION**

Sandy N. Webb, plaintiff,[1] brought suit against her mortgage creditor, Green Tree Servicing, LLC ("Green Tree"), defendant, alleging five claims under Maryland law: interference with a business relationship (Count I); breach of contract (Count II); trespass to land (Count III); invasion of privacy, by intrusion upon seclusion (Count IV); and negligence (Count V). *See* Complaint (ECF 2).[2] Green Tree filed a motion to dismiss (the "Motion") (ECF 9), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In response, Ms. Webb withdrew her negligence claim (Count V).

---

[1] Plaintiff is an attorney licensed to practice law in Maryland and a member of the bar of this Court. She is self-represented in this case.

[2] Plaintiff filed her complaint in the Circuit Court for Queen Anne's County, Maryland. Defendant removed on the basis of diversity. *See* 28 U.S.C. § 1332(a); 1441; *see also* Notice of Removal (ECF 1). Plaintiff is apparently a citizen of Oregon (or, perhaps, of Maryland). Defendant is a limited liability company, and thus is a citizen of, every state of which its members are citizens. *See, e.g., Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Defendant's only member is another LLC, and the chain of membership includes many other LLCs. Ultimately, however, three corporations have membership interests in defendant: Green Tree MH Corp. and Green Tree HE/HI Corp., both of which are Delaware corporations with their principal places of business in Minnesota; and Walter Investment Co., a Delaware corporation with its principal place of business in Florida. *See* ECF 8 & ECF 10. As none of these corporations is a citizen of Oregon or Maryland, the requirement of complete diversity is satisfied. *See* 28 U.S.C. § 1332(c)(1) (for diversity purposes, a corporation is a citizen of its state of incorporation and principal place of business). The jurisdictional amount-in-controversy threshold also appears to be satisfied, because plaintiff seeks money damages in excess of $75,000.

The viability of the remaining claims must be resolved by the Court.   Green Tree's Motion has been fully briefed,[3] and the Court now rules without a hearing, pursuant to Local Rule 105.6.  As I shall explain, I will grant the Motion in part, and deny it in part.

## Background

In considering a motion to dismiss under Rule 12(b)(6), a court accepts the truth of the well pleaded facts in the plaintiff's complaint, and construes them in the light most favorable to the plaintiff.  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  Accordingly, this factual presentation is drawn from Ms. Webb's complaint.

Ms. Webb owns an improved parcel of real property located at 4312 Main Street in Grasonville, Maryland (the "Property" or the "Residence").  Complaint ¶ 1, 7.  At all relevant times, Ms. Webb lived in Oregon, and leased the Property to an unidentified tenant.  *Id.* ¶ 6.[4] The tenant paid Ms. Webb monthly rent of $1,200.  *Id.* ¶ 24.

The Property is subject to a mortgage in favor of Green Tree.[5]  As quoted in plaintiff's complaint, *id.* ¶ 27, the Deed of Trust for the Property contains a provision that states:

> "Lender or its agent may make reasonable entries upon and inspects [sic] of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause."

---

[3] I have considered Green Tree's Motion (ECF 9) and its supporting memorandum (ECF 9-1) (collectively, "Motion"), Ms. Webb's opposition thereto ("Opposition" or "Opp.") (ECF 11), and Green Tree's reply ("Reply") (ECF 12).

[4] According to the complaint, Ms. Webb "lived in the home in excess of one year after purchase," but began leasing it after she "unsuccessfully tried to sell it before she moved to Oregon," when her husband began a new job in that state.  Complaint ¶ 22.  She "never intended the home as an investment property."  *Id.*

[5] Green Tree is not the original mortgage creditor.  In her complaint, plaintiff averred that the original lender was National City Mortgage.  Complaint ¶ 27.  The mortgage arose pursuant to a Deed of Trust "signed on December 21, 2006."  *Id.*  Ms. Webb purchased the Property "at a closing conducted on December 6, 2006."  *Id.* ¶ 5.

At some point (the complaint does not say exactly when), Ms. Webb's husband sustained a physical injury that required surgery.  *Id.* ¶¶ 15, 21.  Ms. Webb subsequently became delinquent on her mortgage payments to Green Tree, because until her husband began to receive "incapacity pay (the Navy's form of workman's compensation)," all of the "family's reduced income needed to go towards food, gas, rent and insurance."  *Id.* ¶ 15.

According to the complaint, on January 27, 2011, Ms. Webb's tenant observed an unidentified person on the Property, who was "walking around the Residence" in "the private areas of the yard," and "peering through windows."  Complaint ¶¶ 7-8.  This individual was an employee of Five Brothers Mortgage Assistance ("Five Brothers"), which plaintiff alleges is an agent of Green Tree.[6]  The Five Brothers employee told the tenant that the Property had been "foreclosed by the bank," and that Five Brothers personnel would come back the next day to remove the tenant's belongings, change the locks, and board up the windows.  *Id.* ¶ 7.  Although Ms. Webb was in default on the mortgage, Green Tree had not initiated a judicial foreclosure proceeding at that time.  *Id.* ¶ 10.  Ms. Webb also had not received any notice of an inspection of the Property from Green Tree.  *Id.* ¶ 29.

The tenant contacted Ms. Webb "because she was 'freaked-out' and confused about the situation."  *Id.* ¶ 10.  Ms. Webb spoke with the Five Brothers employee that day,[7] who informed her that "'it didn't matter what [Mrs. Webb] had to say, it only mattered to the employee if the Residence was on a list to be cleared and boarded up because he [(the employee)] takes his direction only from the mortgage company who owns the home.'"  *Id.* ¶ 8 (quotation marks and brackets in original).  The employee also provided Ms. Webb with Five Brothers' toll-free phone

---

[6] Green Tree does not agree that Five Brothers is its agent, but accepts the truth of the allegation for purposes of its Motion.  *See* Motion at 7 n.3.

[7] It is not clear how plaintiff was placed in touch with the Five Brothers employee.

number.  *Id.*  When plaintiff telephoned Five Brothers, the person who answered the phone told her that Five Brothers "'receives calls from people all the time claiming that the homes on its list haven't been foreclosed on,'" stated that "'if she paid her bills this wouldn't be a problem,'" and hung up on her.  *Id.* ¶ 9 (quotation marks in original).  Ms. Webb called back and spoke to a supervisor, who informed her that "the only way [Five Brothers] would call off the moving/close-up crew was if the mortgage lender told it to take the Residence off the list of recently acquired homes." *Id.*

Ms. Webb "instructed the tenant to call the local police department if Five Brothers attempted to enter the Residence or was seen on the property again."  *Id.*  The tenant's father stayed at the residence the next day "to ensure no one entered the Residence and stole [the tenant's] furniture and personal effects or locked her out of the Residence by changing the locks." *Id.* ¶ 11.  By early afternoon on January 28, 2011, Ms. Webb was able to confirm that the Property had been removed from Five Brothers' "list of bank owned properties in need of securing." *Id.*

Thereafter, Ms. Webb contacted Green Tree and spoke with an employee named "Ernie," the "agent assigned to her case," who had "ordered the clean out by Five Brothers."[8]  *Id.* ¶ 9. Ernie refused to acknowledge the distinction between default and foreclosure, "repeatedly stated he had every right to secure the Residence as it 'had been foreclosed upon,'" and refused to assure Ms. Webb that "he would not again place the Residence on the list to be secured by Five Brothers." *Id.* ¶ 12.

Plaintiff alleges that the "tenant was contacted at work and home by Green Tree about the homeowner's mortgage status, even though Mrs. Webb was in contact with Green Tree and

---

[8] The complaint contains a handwritten interlineation identifying "Ernie" as Ernest Wood.  Complaint ¶ 29.  It is not clear who wrote the interlineation.

Green Tree knew where Mrs. Webb lived because she was in weekly contact via phone with Green Tree's representative." *Id.* ¶ 13.  She also avers that she "was informed on January 18, 2011 by her tenant that Ernie was calling her and asking questions about Mrs. Webb's whereabouts," and that plaintiff "told Ernie on January 19 & 20, 2011 that he could not contact the tenant living at the Residence, either at the home or at work," but that Ernie "continued calling the tenant at work and home on the days of January 18, 19 & 20."[9] *Id.*

On or about February 16, 2011, Green Tree transmitted a 45-day notice of intent to foreclose.  *Id.* ¶ 30.[10]  Ms. Webb states that, on February 28, 2011, "after much discussion with the tenant," plaintiff "released the tenant from her lease because Mrs. Webb could no longer promise her quiet enjoyment of the home due to the illegal and harassing actions inflicted upon the tenant by Green Tree."  *Id.* ¶ 14.  According to plaintiff, "the tenant was a young female living alone in her first home just out of college who felt threatened and unsafe in her own home."  *Id.*

Ms. Webb avers that she "intended to again rent the home and make payments on the home; however, due to Green Tree's actions in running off tenant's [sic] from the Residence, she cannot in good conscious [sic] rent to another tenant."  *Id.* ¶ 16.  Plaintiff also alleges that, by "running off Mrs. Webb's tenant, Green Tree turned what was a temporary setback in finances," occasioned by Mr. Webb's injury, "into a permanent setback from which she cannot recover." *Id.* ¶ 15.  "If the tenant had never been run off," asserts plaintiff, "Mrs. Webb would have been able to recover financially and return to making payments on the home."  *Id.* ¶ 16.

---

[9] Given the timeline alleged by plaintiff, it appears possible that plaintiff meant to say that these events occurred on February 18, 19, and 20, 2011, rather than January.  However, the month in which the events occurred is not material to resolution of the Motion.

[10] The requirement to transmit a notice of intent to foreclose is set forth in Md. Code (2010 Repl. Vol., 2011 Supp.), § 7-105.1(c) of the Real Property Article.  The notice must be sent at least 45 days before the initiation of a judicial foreclosure proceeding.  *Id.*

Additional facts will be presented in the discussion.

## Discussion

The purpose of a Rule 12(b)(6) motion is "'to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint" or that are "'integral to and explicitly relied on in the complaint' [where] there [is] no authenticity challenge." *E.I. du Pont*, *supra*, 637 F.3d at 448 (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).[11]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions

---

[11] The ability to consider documents attached or integral to the complaint is an exception to the principle that a court "is not to consider matters outside the pleadings . . . when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Ordinarily, if a court relies upon matter outside of the pleadings in ruling on a 12(b)(6) motion, the court must treat the motion "as one for summary judgment under Rule 56," and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). Whether to convert a motion to dismiss into a summary judgment motion pursuant to Rule 12(d) is discretionary with the court. 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).

Here, although plaintiff quoted the Deed of Trust, she did not attach to her complaint a copy of the Deed of Trust or any other document. Defendant also did not submit any allegedly "integral" documents with its Motion. With her Opposition, however, plaintiff submitted several exhibits, including purported copies of her lease with her tenant (ECF 11-3), the Deed of Trust (ECF 11-6), and the assignment of the Deed of Trust to Green Tree (ECF 11-5). Although Green Tree initially raised an issue regarding the assignment (discussed, *infra*), it is ultimately unnecessary to consider any of plaintiff's exhibits in ruling on the Motion, and thus I will not convert the Motion to one for summary judgment. Nevertheless, it is noteworthy that, in the Reply, Green Tree did not contest the authenticity of any of plaintiff's exhibits.

from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

The parties' disputes of fact ordinarily "cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6)," *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009), because the court must construe the well-pled facts "in the light most favorable to the nonmoving party." *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). However, the complaint's "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . 'unwarranted inferences, unreasonable conclusions, or arguments'" all "fail to constitute well-pled facts for Rule 12(b)(6) purposes," and thus the court need not assume that they are true. *Nemet Chevrolet*, *supra*, 591 F.3d at 255 (citing *Iqbal*, 129 S. Ct. at 1949, and *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

Bearing this standard in mind, I shall consider, in turn, Green Tree's arguments for dismissal of each of plaintiff's causes of action.[12]

---

[12] The causes of action in plaintiff's complaint all arise under state common law. A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). As to tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicto*"), *see, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010), which in this case is Maryland. As to contract claims, Maryland applies the law of the state where the contract was made ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). Although plaintiff's complaint does not specifically allege the location where the Deed of Trust (which forms the applicable contract) was made, nor quote its choice of law provision, both parties rely exclusively upon Maryland law as the substantive law governing

A.  Tortious Interference with a Business Relationship

In Count I of her complaint, plaintiff alleges that Green Tree's actions (including the actions of its alleged agent, Five Brothers) constituted tortious interference with plaintiff's business relationship with her tenant.  *See* Complaint ¶¶ 18-25.   According to Green Tree, plaintiff's tortious interference claim must fail for two reasons.  First, Green Tree asserts that inducement of an actual breach of contract is a required element of a claim for tortious interference with a business relationship.  Motion at 6.  Because plaintiff alleges only that she "released the tenant from her lease," Complaint ¶ 14, and does not allege that the tenant breached the lease, Green Tree claims that plaintiff's tort claim fails as a matter of law.  *Id.*  Second, Green Tree argues that plaintiff's complaint fails to allege facts establishing that Green Tree intentionally interfered with the lease, and that her claim must fail in absence of facts showing "that Green tree acted with the intent to induce or persuade the tenant to breach the lease."  *Id.* In response, plaintiff contends that inducement of an actual breach of contract is not a required element of a tortious interference claim, and that the facts alleged in her complaint are sufficient to support an inference of tortious intent on the part of defendant.  As I shall explain, plaintiff is correct in both respects.

The tort of intentional interference with contractual or business relations is "well-established in Maryland," *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296, 639 A.2d 112, 116 (1994), and "arises only out of the relationships between three parties, the parties to a contract or other economic relationship (P and T) and the interferer (D)."  *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 154, 557 A.2d 965, 973 (1989).  The tort has "two general manifestations." *Macklin*, 334 Md. at 297, 639 A.2d at 117.   The first manifestation is often described as

---

plaintiff's breach of contract claim.  Accordingly, I will apply the substantive law of Maryland in ruling on Green Tree's motion.

"'inducing the breach of an existing contract,'" and the second, "'more broadly,'" constitutes "'maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract.'"  *Blondell v. Littlepage*, 413 Md. 96, 125, 991 A.2d 80, 97 (2010) (citation omitted).

In *Macklin*, the Maryland Court of Appeals explained: "While the two manifestations of the tort share an underlying rationale, *i.e.*, 'under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation,' they differ in their tolerance of interference."  *Macklin*, 334 Md. at 298, 639 A.2d at 117 (citation omitted).  Under the first scenario, "where a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69, 485 A.2d 663, 674 (1984).   "A broader right to interfere with economic relations exists" under the second scenario, "where no contract or a contract terminable at will is involved."  *Id.* at 69-70, 485 A.2d at 674.

The distinction is that, where there is an existing contract that is not terminable at will, "inducing its breach, even for competitive purposes, is itself improper and, consequently, not 'just cause' for damaging another in his or her business."  *Macklin*, 334 Md. at 303, 639 A.2d at 120.  In contrast, where there is no existing contract, or the existing contract is "terminable at will by the party who refuses to continue performance," *id.* at 304, 639 A.2d at 120, "there is no legal assurance of future performance; thus a competitor who intentionally causes a third person not to continue an existing contract terminable at will does not improperly interfere with the contractual relation if no wrongful means are employed."  *Id.* at 305, 639 A.2d at 121.  The Maryland Court of Appeals has provided an illustrative list of "types of wrongful or unlawful acts that could form the basis" for the second manifestation of the tort, including "'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the

institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153, 757 A.2d 108, 113 (2000).

In *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 466, 598 A.2d 794, 802 (1991), *cert. denied*, 325 Md. 619, 602 A.2d 710 (1992), the Maryland Court of Special Appeals gave an articulation of five elements of the first manifestation of the tort: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."   Intent can be proven "by showing that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin*, 334 Md. at 301, 639 A.2d at 119.

The canonical formulation of the elements of the second manifestation of the tort was reiterated by the Maryland Court of Appeals in *Natural Design*, *supra*, 302 Md. at 71, 485 A.2d at 675 (citations omitted):

> "'(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.'"

Green Tree seizes on the statements in the case law, such as in *Fowler*, that "breach" of the underlying contract is an element of the first manifestation of the tort.  As Green Tree sees it, plaintiff's "decision to release the tenant from her lease obligations is not the same as the tenant breaching the lease because of Green Tree's purported conduct and, therefore, cannot support a claim for tortious interference."  Motion at 6.  In response, Ms. Webb cites two decisions of the Maryland Court of Special Appeals, *Orfanos v. Athenian, Inc.*, 66 Md. App. 507, 505 A.2d. 131 (1986), and *Lake Shore Investors v. Rite Aid Corp.*, 67 Md. App. 743, 509 A.2d 727 (1986), which she argues stand for the proposition that "the interference to support an interference with a

business contract claim does not have to cause a breach but it is sufficient if it causes an inability to perform the contract." Opp. at 3.

It is not entirely clear which of the two manifestations of the interference tort applies here, because it is not clear whether plaintiff's lease with her tenant was terminable at will.[13] Nevertheless, I am satisfied that plaintiff's complaint is sufficient to state a claim under either manifestation.  If plaintiff's lease with her tenant was terminable at will, the second manifestation of the interference tort would apply.  The second manifestation does not even require the existence of a contract, and thus it follows that it does not require a breach of a contract.  On the other hand, if the lease was not terminable at will, the first manifestation of the tort applies.  But, even under the first manifestation of the tort, despite the phraseology in some cases describing a "breach" of the contract as a required element, I am satisfied that that phraseology incompletely describes the tort, and that inducement of either a breach or a termination without breach can be actionable.

*Lake Shore* is dispositive of the issue.  In that case, the Maryland appellate court observed that many formulations of the tort use the phrase "breach of contract," and that "there are tortious interference cases in which the tortfeasor caused or induced the breach of the contract." *Id.* at 747, 509 A.2d at 729.  But, the court also observed that "[i]n none of them . . . did the Court hold that the action could not be sustained without proof of a breach of contract," and that a "parallel line of authority indicates that proof of a breach of contract is not an essential element of the tort." *Id.* at 748, 509 A.2d at 729.  The *Lake Shore* Court reviewed prior Maryland case law, including *Goldman v. Harford Road Building Ass'n*, 150 Md. 677, 681-82, 133 A. 843 (1926), in which the Maryland Court of Appeals said that the tort could be

---

[13] For the reasons indicated, I have not considered the copy of the alleged lease submitted with plaintiff's Opposition.

maintained "against a third party who unjustifiably causes an existing contract to be terminated without breach," and *Wilmington Trust Co. v. Clark*, 289 Md. 323, 329, 424 A.2d 744, in which the Maryland Court of Appeals said that the tort applied to one "who, without legal justification, intentionally interferes with the rights of a party to a contract, *or* induces a breach thereof." (Emphasis added.)  *See Lake Shore*, 67 Md. App. at 748-49, 509 A.2d at 729-30 (citing *Goldman* and *Wilmington Trust*).  The *Lake Shore* Court also cited its prior decision in *Orfanos*, in which the court "had occasion to discuss the elements of a tortious interference claim" and "did not list breach of contract as one of them."  *Id.* at 749, 509 A.2d at 730.  In sum, the *Lake Shore* Court held: "Wrongfully inducing a breach is surely one way of committing this tort, but it is equally surely not the only way."  *Id.* at 753, 509 A.2d at 732.

In *Macklin*, *supra*, decided after *Lake Shore*, the Maryland Court of Appeals stated that, "to be actionable, the improper or wrongful conduct must induce the breach *or termination* of the contract."  *Macklin*, 334 Md. at 301-02, 639 A.2d at 119 (emphasis added).  That statement from *Macklin* appears to be a more comprehensive description of this element of the first manifestation of the interference tort.

To be sure, there are many references to inducing a "breach of contract" in the Maryland case law regarding the tort.  And, frequently, a breach of contract will be at issue.  Therefore, "breach of contract" may be a convenient shorthand for this element of the tort in most circumstances.  But, *Macklin*, *Lake Shore*, and the other cases upon which they relied make clear that intentional interference with a party's rights under a contract or inducing a termination without breach, as plaintiff alleges occurred here, may also satisfy this element of the tort in Maryland.  Accordingly, defendant's argument is without merit.

Green Tree also argues that plaintiff's complaint fails sufficiently to allege an intent on the part of Green Tree to interfere with the lease between plaintiff and her tenant. However, intent "'can rarely be established by direct evidence, and must often be proved circumstantially and by inference.'" *Laws v. Thompson*, 78 Md. App. 665, 678, 554 A.2d 1264, 1271 (citation omitted), *cert. denied*, 316 Md. 428, 559 A.2d 791 (1989). In my view, plaintiff's complaint alleges ample facts that, taken in the light most favorable to her, could cause a fact finder to infer, from the actions allegedly taken by defendant and its purported agents, an intent to injure plaintiff's business relationship with her tenant.

As plaintiff points out, so long as the lease was "bona fide," her tenant's right to possession of the Property pursuant to the lease would not necessarily have been affected by foreclosure of plaintiff's mortgage. Under the federal Protecting Tenants at Foreclosure Act ("PTFA"), Pub. L. No. 111-22, 123 Stat. 1632, §§ 701 *et seq.* (2009), *as amended by* Pub. L. No. 111-203, 124 Stat. 1376, § 1484 (2010), and its Maryland state-law counterpart, Md. Code (2010 Repl. Vol., 2011 Supp.), § 7-105.6(b)(2) of the Real Property Article ("R.P."), a tenant of residential real property under a "bona fide" lease is ordinarily entitled to occupy the premises at least until the expiration of the lease term, despite the sale of the residential property at foreclosure.[14] Certainly, under Maryland law, defendant and its agents had no authority to "clear the tenant's stuff out of the Residence, put new locks on the doors, and board up the windows" at

───────────────────────

[14] Under both the PTFA and R.P. § 7-105.6, a "bona fide" lease is defined as one where the tenant is not a child, spouse, or parent of the property owner; that was the result of an arm's length transaction; and that requires receipt of rent that is not substantially below a fair market rent for the property. *See* Pub. L. No. 111-22, 123 Stat. 1632, § 702(b) (2009); R.P. § 7-105.6(b)(1). The federal and state enactments contain an exception permitting a purchaser of residential real property subsequent to a foreclosure sale to terminate the tenancy of a tenant if the purchaser will occupy the property as the purchaser's primary residence. *See* Pub. L. No. 111-22, 123 Stat. 1632, § 702(a)(2)(A); R.P. § 7-105.6(b)(3). The PTFA contains a sunset provision, by which it will expire as of December 31, 2014. *See* Pub. L. No. 111-203, 124 Stat. 1376, § 1484 (2010). However, R.P. § 7-105.6 does not contain a sunset provision.

the time of the alleged visit to the property by the Five Brothers employee in January 2011, Complaint ¶ 7, nor would defendant have had any right to evict plaintiff's tenant from the Property for, at minimum, several months thereafter, in light of the statutory requirements of Maryland's foreclosure process for residential real property.  *See generally* R.P. § 7-105.1; Md. Rules 14-201 *et seq.*

Taking the allegations of the complaint in the light most favorable to plaintiff, a fact finder could infer from the threat of defendant's agent on January 27, 2011, to evict plaintiff's tenant the next day, and from defendant's repeated phone calls to the tenant, an intent to interfere with the tenancy and to cause the tenant to breach or to terminate the lease.   Assuming, *arguendo*, that the second manifestation of the interference tort applies, these alleged acts, which could be seen as threats to evict plaintiff's tenant in violation of the PTFA and its Maryland counterpart, also suffice, in my view, as independently "wrongful or unlawful acts," *Berry & Gould*, *supra*, 360 Md. at 153, 757 A.2d at 113, which satisfy the requirements of the second manifestation of the tort.

In sum, the allegations of plaintiff's complaint as to Count I are sufficient to state a cause of action for intentional interference with a contract or other business relationship under Maryland law.  Therefore, as to Count I of the complaint, Green Tree's Motion will be denied.

### B.  Breach of Contract and Trespass

In her complaint, plaintiff contends that, through the entry onto the Property by Green Tree's alleged agent, the Five Brothers employee, Green Tree breached its contractual duties to plaintiff (Count II), and committed a trespass on the Property (Count III).  The gravamen of both counts is that the entry onto the Property, without notice to plaintiff, violated the provision of the Deed of Trust that stated, Complaint ¶ 27 (quoting Deed of Trust):

- 14 -

"Lender or its agent may make reasonable entries upon and inspects [sic] of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause."

As an initial objection to plaintiff's breach of contract claim, Green Tree argues that plaintiff's complaint fails to allege that Green Tree is in contractual privity with plaintiff. Motion at 7.  Green Tree notes that, as plaintiff alleges, Green Tree was not an original party to the Deed of Trust; rather, the Deed of Trust was executed by plaintiff and National City Mortgage.  *See* Complaint ¶ 27.  Further, Green Tree claims that "there are no allegations in the complaint that the Deed of Trust was ever assigned to Green Tree," Motion at 7, and affirmatively represents that "Green Tree's relationship with Plaintiff is limited to servicing Plaintiff's mortgage loan."  *Id.* at 7 n.2.  In this connection, Green Tree points out that Ms. Webb's complaint refers to Green Tree as "a mortgage servicing company."  Complaint ¶ 2.

Preliminarily, I note that, as an exhibit to her Opposition, plaintiff submitted a purported copy of an assignment of the Deed of Trust to Green Tree, apparently filed in the land records of Queen Anne's County, Maryland (ECF 11-5).  In its reply, Green Tree did not dispute the authenticity of this document, nor did it reiterate its argument founded on lack of privity or its assertion that it was merely a servicer of plaintiff's mortgage.

I need not necessarily consider the purported assignment, however.  Although the allegations of plaintiff's complaint certainly could be clearer with respect to the issue of privity, they are sufficient, in my view, to state a claim for breach of contract.

Mortgage servicing is the "administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes."  BLACK'S LAW DICTIONARY 1105 (9th ed. 2009).  Mortgage servicing is usually "performed by the lender or the lender's agent for a fee," *id.*, but can be distinct from the role of a mortgagee or mortgage holder,

who is the "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." *Id.* at 1104. Certainly, plaintiff's complaint does describe Green Tree as a "mortgage servicing company," and the name, "Green Tree Servicing, LLC," suggests a primary business of mortgage servicing. But, the complaint does not expressly allege that Green Tree was the mortgage servicer, rather than the mortgage creditor, for plaintiff's mortgage.

However, the complaint does allege that Green Tree "purchased numerous National City Mortgages from PNC [M]ortgage after National City Mortgage went bankrupt and sold its assets to PNC Mortgage," and that "many of these purchased mortgages being held are in Queen Anne's County." Complaint ¶ 2. Although the complaint does not specifically allege that plaintiff's mortgage was one of the former National City mortgages that Green Tree purchased, the complaint avers that Green Tree owed duties to plaintiff under the Deed of Trust, notwithstanding that National City Mortgage was the "original party to the mortgage note." Complaint ¶ 27. In my view, these allegations, especially given that defendant did not renew its privity argument in its reply, are sufficient to allege a contractual duty to plaintiff on the part of Green Tree, so as to withstand defendant's Motion.[15]

Therefore, I turn to defendant's primary argument against both the breach of contract claim and the trespass claim, which is that the Deed of Trust only required Green Tree to give notice of an "interior inspection," and that it expressly authorized Green Tree to make "reasonable entries" on the Property. Green Tree contends that, so long as its agent did not inspect the interior of the Residence, entry onto the Property constituted neither a breach of

---

[15] It is also noteworthy that, if Green Tree's lack of privity defense to plaintiff's breach of contract claim were successful, it would be self-defeating with respect to plaintiff's trespass claim, because without the authorization contained in the Deed of Trust, Green Tree would have no source of authority to enter plaintiff's Property.

contract nor a trespass.[16]   In response, plaintiff contends that, by "peering through windows," Complaint ¶ 8, the Five Brothers employee conducted an "interior inspection" of the Property, without notice.  Opp. at 7.  Moreover, she argues that, in any event, Green Tree's entry was not "reasonable," because "entering the yard and peering through [the tenant's] windows is not reasonable."  *Id.*

Neither party cites authority in support of its position, but the Court's research has uncovered a handful of cases addressing contractual provisions authorizing entry onto real property that are similar or identical to the relevant provision of the Deed of Trust.  In a decision from this district, *Beatty v. BAC Loans Servicing, LP*, Civ. No. RDB-10-2289, 2011 WL 2516394 (D. Md. June 21, 2011), Judge Richard Bennett ruled that "two drive-by inspections" of the plaintiff's property by a mortgage creditor, conducted without notice to plaintiff, did not violate an identical provision in the plaintiff's deed of trust.  *Id.* at *3.  Similarly, in *Moseley v. CitiMortgage, Inc.*, No. C11-5349RJB, 2011 WL 5175598 (W.D. Wash. Oct. 31, 2011), the court granted summary judgment in favor of a mortgage servicer as to the plaintiffs' trespass claim, holding that the servicer's agents did not unreasonably enter the property in violation of an identical deed of trust provision, where the servicer or its agent, on multiple occasions, "placed a notice on a doorknob, requesting the [plaintiffs] to contact [the servicer]."  *Id.* at *10.  However, the alleged entry at issue in this case, accompanied by peering into the windows of the Residence and threats of imminent eviction, was far more intrusive than a "drive-by" inspection

---

[16] "'In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent.'"  *Royal Investment Gp., LLC v. Wang*, 183 Md. App. 406, 445, 961 A.2d 665, 688 (2008) (citation omitted), *cert. granted*, 408 Md. 149, 968 A.2d 1064, *appeal dismissed before argument*, 409 Md. 413, 975 A.2d 875 (2009).  Green Tree argues that, by authorizing it to make reasonable entries upon the Property in the Deed of Trust, plaintiff consented to Green Tree's entry on the Property, thus negating the third element of the tort of trespass.

or the mere hanging of a notice on a doorknob.

*Beatty* and *Moseley* are in contrast with *Loud v. Cimmino*, No. HHBCV095011214S, 2011 WL 5009468 (Conn. Super. Ct. Sept. 26, 2011), which involved a similar deed of trust provision and an inspection of the property.  In that case, at the summary judgment stage, the mortgage creditor's inspector claimed that he inspected the property "'from the outside of the house'" but "'never entered the house.'"  *Id.* at *2 (quoting inspector's affidavit).  In contrast, the plaintiff claimed that the inspector conducted an "interior inspection" and cited the inspector's written report, in which the inspector appraised the condition of the "'carpet and walls'" and the "'kitchen cabinet[s],'" and stated: "'I performed a complete visual inspection of the interior and exterior areas of the subject property.'"  *Id.* (quoting appraisal).  The *Loud* Court ruled that genuine issues of material fact precluded summary judgment, including "(1) the meaning of the phrase 'inspect the interior of the improvements' in the open-end mortgage deed and (2) whether the defendants conducted an interior inspection of the house."  *Id.* (quoting deed).

In my view, a fact finder could conclude that the entry alleged by plaintiff was not a "reasonable entry" onto the Property, and thus was not authorized by the Deed of Trust. Accordingly, I reject defendant's arguments for the dismissal of Count II and Count III.[17]

## C.  Intrusion Upon Seclusion

In Count IV, plaintiff alleges the tort of intrusion upon seclusion, which is recognized in Maryland as one of several varieties of the umbrella tort of invasion of privacy.  *See, e.g.*, *Bailer v. Erie Ins. Exchange*, 344 Md. 515, 525-27, 687 A.2d 1375, 1380-81 (1997); *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 163-65, 502 A.2d 1101, 1116-17 (1985), *cert. denied*, 306 Md. 289, 508 A.2d 488, *cert. denied*, 479 U.S. 984 (1986).  The basis for plaintiff's claim

---

[17]  I need not resolve, at this juncture, plaintiff's argument that peering into windows constituted an "interior inspection," for which notice would have been required under the Deed of Trust.

again arises from the Five Brothers employee's entry onto the Property.

The tort of intrusion upon seclusion constitutes "'[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 522, 883 A.2d 1008, 1022 (2005) (citation omitted), *cert. denied*, 390 Md. 501, 889 A.2d 418 (2006).   Defendant urges dismissal of plaintiff's intrusion upon seclusion claim, and relying primarily on the same reasoning it advanced as to the breach of contract and trespass claims.   Specifically, Green Tree contends that its alleged agent's entry onto the Property was reasonable as a matter of law. Motion at 8-9.  This argument fails to persuade me, largely for the same reasons that I rejected the argument with respect to Counts II and III.

However, Green Tree also contends that plaintiff "appears to base her invasion of privacy claim on alleged conduct committed against the tenant, but fails to provide any factual support as to why or how Plaintiff has standing to assert such a claim on behalf of a third-party."  Motion at 8 n.4.  "On this basis alone," Green Tree argues, "Plaintiff's invasion of privacy claim should be dismissed."  *Id.*  In response, plaintiff argues that, "[a]s the Landlord (Plaintiff) and Tenant were in a mere contractual relationship, and the owner at all times remained Plaintiff, the intrusion and entry upon the land was against the owner (Plaintiff) who has the right to the land and to file any claim arising from its ownership even if the home was previously rented."  Opp. at 8.  Neither party has cited case law in support of its position.

I have not uncovered case law directly addressing whether a landlord has standing to raise a claim of intrusion upon seclusion based on conduct at the landlord's property that involved the landlord's tenant and occurred in the landlord's absence.   Nevertheless, I am satisfied that plaintiff's claim cannot proceed.

Plaintiff relies upon her status as the landowner of the Property in support of her claim for standing.  But, Maryland case law makes clear that intrusion upon seclusion depends upon a person's reasonable expectation of privacy, and not upon concepts of ownership under real property law.  In *Furman v. Sheppard*, 130 Md. App. 67, 744 A.2d 583 (2000), the Maryland Court of Special Appeals spoke clearly: "Not every trespass constitutes an unreasonable search or intrusion.  A trespass 'becomes relevant only when it invades a defendant's reasonable expectation of privacy.'"  *Id.* at 74, 744 A.2d at 586 (citation omitted).

In *Bailer*, *supra*, the Maryland Court of Appeals found "instructive" a South Carolina case, *Snakenburg v. Hartford Casualty Insurance Co.*, 383 S.E.2d 2 (1989), in which the alleged tortfeasor committed intrusion upon seclusion by "induc[ing] teenage females to model bathing suits at his home. Unknown to the 'models,' the [tortfeasor] video taped them while they were using a bedroom to change into and out of the swimsuits."  *Bailer*, 344 Md. at 526, 687 A.2d at 1381 (citing *Snakenburg*).  In *Snakenburg*, the tortfeasor was liable for intrusion upon seclusion despite the fact that the tort was committed in the alleged tortfeasor's own home.  This strongly supports the position that the privacy protected by the tort is the personal privacy of an affected individual, and not the property interests of the person who owns the property where the tort is committed.  Put another way, plaintiff has not alleged any facts that show that her privacy, as opposed to her tenant's, was invaded by the acts of Green Tree's agent.  Because there is no likelihood that this deficiency could be cured by amendment of the complaint, Count IV of the complaint will be dismissed, with prejudice.

### D.  Negligence

Green Tree raised several arguments against plaintiff's allegation of negligence (Count V), which was premised upon Green Tree's alleged representation in the foreclosure

proceedings by the law firm Sharpiro & Burson, which plaintiff states "was recently caught submitting inappropriate, incomplete, and otherwise non-compliant documents in the Maryland Courts."  Complaint ¶ 17.  In her Opposition, plaintiff conceded that her negligence claim was "premature," and stated that she "agrees to the dismissal of the claim for negligence."  Opp. at 8.  In its reply, Green Tree stated: "Green Tree agrees that the negligence claim is deficient, but not only because it is premature. The claim also fails because Green Tree does not owe any duty to plaintiff regarding its selection of counsel to handle the foreclosure of plaintiff's Property."  Reply at 2 n.2.

Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure entitles a plaintiff unilaterally to "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Such a dismissal ordinarily is without prejudice.  Fed. R. Civ. P. 41(a)(1)(B).  Here, neither an answer nor a motion for summary judgment has been filed, and thus plaintiff is entitled to dismiss her negligence claim without prejudice at this juncture.  To be sure, plaintiff indicated her willingness to dismiss the claim in her Opposition to defendant's motion to dismiss, rather than in a separately filed notice of voluntary dismissal.  However, courts have generally held that, in order to be effective, withdrawal of a claim need not take the particular form of a document captioned "Notice of Voluntary Dismissal."  *See generally* 9 WRIGHT & MILLER § 2363, at 437-41 (3d ed. 2008, 2011 Supp.) (citing cases).

Because plaintiff is entitled, at this juncture, to withdraw her negligence claim without prejudice, I will dismiss Count V without prejudice, and without expressing any view as to plaintiff's contention that her claim was merely "premature."

**Conclusion**

For the foregoing reasons, Green Tree's Motion (ECF 9) will be granted in part and denied in part.  In particular, I will dismiss Count IV of plaintiff's complaint, with prejudice, but deny the Motion as to Counts I, II, and III.  Additionally, Count V of plaintiff's complaint will be dismissed, without prejudice.  An Order implementing my ruling follows.


Date:   December 9, 2011                           _____/s/_____
                                                   Ellen Lipton Hollander
                                                   United States District Judge