IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SANDY N. WEBB,<br>    *Plaintiff*,<br><br>v.<br><br>GREEN TREE SERVICING, LLC,<br>    *Defendant*.<br><hr>GREEN TREE SERVICING, LLC,<br>    *Third-Party Plaintiff*,<br><br>v.<br><br>FIVE BROTHERS MORTGAGE<br>COMPANY SERVICES AND<br>SECURING, INC.,<br>    *Third-Party Defendant*. | Civil Action No. ELH-11-2105 |

**MEMORANDUM OPINION**

This Memorandum Opinion resolves the "Motion to Strike Plaintiff's Amended Complaint" ("Motion to Strike") (ECF 27), filed by defendant Green Tree Servicing, LLC ("Green Tree"). Sandy N. Webb, plaintiff, has filed an Opposition (ECF 31) to the motion, and Green Tree has filed a Reply (ECF 45).[1] No hearing is necessary. *See* Local Rule 105.6. I will grant Green Tree's motion in part and deny it in part, for the reasons that follow.

**Background**

Plaintiff's factual allegations are set forth in the Court's Memorandum Opinion of December 9, 2011 (ECF 16), and I need not reiterate them in detail.

---

[1] Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers"), the third-party defendant, entered its appearance after the Motion to Strike was fully briefed, and has not articulated a position as to the Motion to Strike.

In brief, plaintiff owns a parcel of residential real property over which Green Tree holds a mortgage. Plaintiff leased the property to a tenant. Plaintiff then became delinquent on her mortgage payments. Plaintiff's claims arise out of a series of alleged incidents in which she contends that employees of Green Tree telephoned her tenant at work on several occasions, and an employee of Green Tree's alleged agent, Five Brothers, appeared in person at the property, falsely claiming that the property was foreclosed and that the tenant would be evicted and the property boarded up on the following day. According to plaintiff, this series of events prompted the tenant to demand successfully that plaintiff release her from the lease, causing plaintiff to lose her rental income and, in turn, to fall further into delinquency on the mortgage.

In my earlier Memorandum Opinion, I granted in part and denied in part a motion to dismiss filed by Green Tree. As a result of that decision, three counts remained viable: tortious interference with a business relationship (Count I); breach of contract (Count II); and trespass to land (Count III). Thereafter, I issued a Scheduling Order (ECF 21), which established several deadlines, including February 6, 2012 (later amended to February 13, 2012) as the deadline for "[m]oving for joinder of additional parties and amendment of pleadings." On February 13, 2012, without moving for leave to do so as required by Fed. R. Civ. P. 15(a)(2), plaintiff filed an Amended Complaint (ECF 26), which prompted Green Tree's Motion to Strike.[2]

---

[2] As I explained in a subsequent Order, dated March 14, 2012 (ECF 29), the deadline in the Scheduling Order

> did not dispense with applicable requirements to seek leave of court, by motion, for joinder of additional parties or amendment of pleadings. It merely established a deadline by which such motions had to be filed. The significance of the deadline established by the scheduling order is that, if such a motion is filed after the deadline, the moving party must not only obtain the court's leave under the applicable standard (*e.g.*, for amendment of pleadings, the "freely . . . when justice so requires" standard of Fed. R. Civ. P. 15(a)(2)), but must *also* show "good cause" for modification of the schedule under Fed. R. Civ. P. 16(b)(4). *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

The Amended Complaint does not significantly alter plaintiff's first three counts, which survived Green Tree's motion to dismiss.[3] Nor has plaintiff attempted to reassert Counts IV and V, which did not. The primary change is the addition of two new counts, denominated as Count VI and Count VII. Count VI alleges violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Count VII is captioned "Negligence *PerSe* [sic]"; in Count VII, plaintiff argues that Green Tree "owed a duty" under the "Protecting Tenants in Foreclosure Act" and the FDCPA, Amended Complaint ¶ 57, and that it breached that duty by calling her tenant at work and sending agents to the property to "inspect and secure" it, despite the fact that no foreclosure had occurred nor was the property "in danger of destruction/waste/damage," thereby causing damage to plaintiff. *Id.* ¶¶ 58-59.

## Discussion

Although plaintiff failed to move for leave to amend her complaint, Green Tree's Motion to Strike invokes the same standard that the Court would apply in considering a motion for leave to amend—specifically, the standard governing amendment of pleadings that is imposed by Rule 15(a)(2) of the Federal Rules of Civil Procedure. Accordingly, I will consider the issues as if I were ruling on a motion for leave to file an amended complaint.

Rule 15(a)(2) instructs that courts should "freely" grant leave to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), and commits the matter to the discretion of the district court. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). A district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."

---

[3] Plaintiff adds a contention that Green Tree was "assigned the rights under" numerous mortgages previously held by National City Mortgage, in the alternative to "having purchased" them. Amended Complaint ¶ 2. She also has revised the damages demands in Counts II and III so as to be consistent with each other. Both counts now demand $227,115.19 in damages. *Id.* at 7-8. Green Tree does not object to either of these amendments.

*Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

In this case, Green Tree does not assert prejudice or bad faith. Rather, it contends that the Amended Complaint is futile, because Count VI and Count VII fail to state claims upon which relief can be granted. The Fourth Circuit has said that "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," thereby seeming to equate the futility inquiry with the standard for dismissal under Rule 12(b)(6). *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Because [the] proposed amended complaint does not properly state a claim under Fed. R. Civ. P. 12(b)(6) . . . , we find the district court correctly determined that further amendment would be futile.")); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 200 (4th Cir. 2002); *Szaller v. American Nat'l Red Cross*, 293 F.3d 148, 153 n.2 (4th Cir. 2002).

### A.  Count VI (FDCPA)

The FDCPA imposes a variety of obligations and potential liabilities on "debt collectors," who are generally defined as entities that "use[ ] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [that] regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). In other words, the FDCPA is concerned with "rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (emphasis added). The statute does not "'apply to creditors collecting debts in their own names and whose

primary business is not debt collection,' or to the individual employees of such creditors." *Betskoff v. Enterprise Rent A Car Co.*, Civ. No. ELH-11-2333, 2012 WL 32575, at *5 (D. Md. Jan. 4, 2012) (quoting *Kennedy v. Lendmark Fin. Servs.*, Civ. No. RDB-10-2667, 2011 WL 4351534, at *3 (D. Md. Sept. 15, 2011)); *see also Akpan v. First Premier Bank*, Civ. No. DKC–09-1120, 2010 WL 917886, at *4 (D. Md. Mar. 8, 2010). As the Seventh Circuit recently said, "An entity that tries to collect money owed to itself is outside the FDCPA." *Carter v. AMC, LLC*, 645 F.3d 840, 842 (7th Cir. 2011). An entity to which a debt is owed falls outside the definition of "creditor" and qualifies as a "debt collector" only if the entity "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another," 15 U.S.C. § 1692a(4), or if the "principal purpose" of the entity's business is debt collection. *Id.* § 1692a(6).

Moreover, the definition of "debt collector" contains an exemption for an entity, such as a mortgage servicer, that collects debts that were "not in default at the time [they were] obtained" by the entity. 15 U.S.C. § 1692a(6)(F)(iii). Thus, it "is well-settled . . . that . . . mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA," to the extent that they take action to collect debts that were not in default at the time they acquired the debts. *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va.) (emphasis omitted), *aff'd*, 67 F. App'x 238 (4th Cir. 2003); *accord Adam v. Wells Fargo Bank, N.A.*, Civ. No. ELH-09-2387, 2011 WL 3841547, at *20 (D. Md. Aug.26, 2011); *Flores v. Deutsche Bank Nat'l Trust Co.*, Civ. No. DKC-10-217, 2010 WL 2719849, at *6 (D. Md. July 7, 2010); *Sparrow v. SLM Corp.*, Civ. No. RWT-08-12, 2009 WL 77462, at *2 (D. Md. Jan. 7, 2009); *see also De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) (citing legislative history of the FDCPA indicating that the exception in § 1692a(6)(F)(iii)

was intended to provide that "'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing,'" are not debt collectors).

In her Amended Complaint, plaintiff alleges that Green Tree "is a debt collector as defined by 15 USC 1692a(6)," and avers, on the basis of belief, that Green Tree is "involved with the debt collection business." Amended Complaint ¶ 52. And, the Amended Complaint makes clear that Green Tree was not plaintiff's original mortgage lender. *See id.* ¶¶ 2, 27. However, plaintiff does not allege that the principal purpose of Green Tree's business is debt collection, nor does she specifically allege that Green Tree obtained her mortgage (either through assignment or for servicing) when the mortgage was in default. Notably, neither the date that Green Tree acquired plaintiff's mortgage nor the date of plaintiff's default is alleged in the Amended Complaint.

As I observed in my prior Memorandum Opinion, ECF 16 at 15-16, there may be some dispute in this case as to whether Green Tree was plaintiff's mortgage creditor or, instead, her mortgage servicer. Regardless of that dispute, the FDCPA does not impose liability either on a creditor that is not principally in the debt collection business or on the servicer of a mortgage that is not in default when taken for servicing. Neither such entity qualifies as a "debt collector" within the meaning of the FDCPA. Thus, Green Tree maintains that plaintiff cannot plausibly claim that it is a "debt collector" under the FDCPA.

Plaintiff offers two responses. First, she argues that the mortgage was in default when Green Tree acquired it. Second, she claims that the mortgage was never validly assigned from

National City Mortgage ("National City"), plaintiff's original mortgage lender, to Green Tree. I will consider these claims in reverse order.[4]

Plaintiff's argument as to the validity of the assignment is difficult to comprehend. She claims that the "Notice of Assignment has an erroneous call to the deed; the deed is correctly at Liber 1638, Folio 648, and not as the assignment states at Liber 1638, Folio 653." Opposition at 2. In addition, she states: "The document number stated on the Notice of Assignment is also incorrect, stating the Document No. is 361239 when if it were correctly stated it would have been no. 361238." *Id.* As plaintiff sees it, these alleged discrepancies render the assignment "deficient, making Green Tree a third party to this mortgage." *Id.* I assume, for the sake of argument, that an inaccurate cross-reference to a deed of trust by liber and folio in a purported assignment of that deed of trust could render the assignment defective. Copies of both the assignment to Green Tree and the deed of trust in favor of National City, as they appear in the Land Records of Queen Anne's County, were attached as exhibits to plaintiff's opposition to Green Tree's earlier motion to dismiss. The first page of the deed of trust (ECF 11-6) is stamped at "LIBER 1638 FOLIO 653," and "DOC. NO. 361239." The deed of trust was executed by Ms. Webb in favor of National City, and dated December 21, 2006. The assignment (ECF 11-5) states, in relevant part:

> PNC BANK, NATIONAL ASSOCIATION SUCCESSORT BY MERGER [to] National City Mortgage a Division of National City Bank, . . . (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to GREEN TREE SERVICING LLC, . . . ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

---

[4] In support of both of her arguments, plaintiff cites documents that are outside the pleadings, which Green Tree contends is improper. I need not resolve Green Tree's contention because plaintiff's arguments either fail on their merits even when the matter outside the pleadings is considered, or succeed under a Rule 12(b)(6) standard without reference to matter outside the pleadings.

Said deed dated 12/21/2006 executed by SANDY WEBB and recorded among the land records of GRASONVILLE (city), QUEEN ANNES (county), Maryland in **Liber 1638, page 653** or as **Instr# 361239**.  (Emphasis added.)

Simply put, the discrepancy that plaintiff alleges does not exist.  The assignment refers accurately to the deed of trust that it assigns.[5]

Plaintiff's contention that the mortgage was in default when Green Tree acquired it bears more discussion.  Plaintiff's contention is based on provisions of the promissory note (the "Note") that the deed of trust secured.  She submitted a partial purported copy of the Note as an exhibit to her Opposition.  *See* Note, Ex.2 to Opposition (ECF 31 at 10-11).  The Note provided that plaintiff would be "in default" if she did "not pay the full amount of each monthly payment on the date it is due."  Note at 2.  It also required monthly payments to be made "on the 1st day of each month."  Note at 1.  And, the Note contained a provision imposing late charges if a monthly payment was not received "by the end of 15 calendar days after the date it is due."  Note at 2. Plaintiff contends that she typically made her monthly mortgage payment on the fifteenth of each month, and has submitted unauthenticated bank statements indicating that her mortgage payment was made on or about the fifteenth of the month in November 2009 and March 2010.[6] If she had not made payment by the first of the month in the month that Green Tree acquired the

---

[5] Plaintiff has not submitted a copy of the document allegedly found at Liber 1638, Folio 648 (Instrument No. 361238) in the Land Records of Queen Anne's County, to which she contends the assignment ought to have referred.  If that document is the title deed by which the previous owner of the property conveyed the property to plaintiff, plaintiff is clearly mistaken in asserting that the assignment should have referred to that deed.  The assignment conveyed to Green Tree the interest of the mortgagee (*i.e.*, National City or its successor), which was secured by the deed of trust; the mortgagee could not have conveyed plaintiff's interest, represented by the title deed.

[6] The assignment was executed February 18, 2010, and was recorded in the land records on March 30, 2010, but contains a notation stating: "Effective Date 11/01/2009."  ECF 11-5 at 1. Plaintiff did not submit her bank statement for February 2010.


mortgage, her argument goes, the mortgage was "in default," under the terms of the Note, when Green Tree acquired it.

Although the definition of a "debt collector" under the FDCPA depends, in part, on whether a debt is in "default" at the time the defendant acquires it, the statute does not contain a definition of "default." *See, e.g.*, *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501-02 (7th Cir. 2008) ("The FDCPA does not define 'default' . . . ."). There is authority for the proposition that courts should look to the contractual definition of "default," if any, in the document establishing the debt, or to other state or federal law governing the debt at issue, to determine whether a particular debt is "in default" for FDCPA purposes. *See, e.g.*, *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1042-44 (W.D. Wis. 2002); *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47 (D. Mass. 1999).

However, I need not resolve at the pleading stage whether the debt was in default when Green Tree acquired it, or consider plaintiff's contention, based on allegations and evidence outside the pleadings, that late payment in the month that Green Tree acquired the mortgage rendered the debt "in default" for FDCPA purposes. Although there is no definitive Fourth Circuit precedent on the standard for pleading that a defendant is a "debt collector" in an FDCPA claim, several courts have held that, in order to state an FDCPA claim, a plaintiff does not need to allege that "no exception to th[e] definition [of debt collector] applies" to the defendant. *Wood v. Capital One Servs., LLC*, 718 F. Supp. 2d 286, 290 (N.D.N.Y. 2010). In *Deuel v. Santander Consumer USA, Inc.*, 700 F. Supp. 2d 1306 (S.D. Fla. 2010), for example, the court determined that the pleading of an FDCPA violation was sufficient where the plaintiff alleged "that Defendant is 'engaged in the practice of debt collection' and that '[a]t all times material to the allegations of the complaint, Defendant was acting as a debt collector with respect to the

collection of Plaintiff's alleged debt'" and the complaint did "not allege any information to undermine the assertion that Defendant is a debt collector." *Id.* at 1309 (quoting complaint). The court reasoned: "Plaintiff has certainly given the defendant fair notice of what the claim is and the grounds upon which it rests. . . . The Complaint . . . need not plead 'the inapplicability of every exception to [the debt collector] definition.'" *Id.* at 1310 (citation omitted).

To the extent that Fourth Circuit case law speaks to this issue, it has described as an "affirmative defense" the assertion that a defendant falls into an exception to the definition of "debt collector." *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992). Typically, the applicability of an affirmative defense can only be resolved under a Rule 12(b)(6) standard "if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*). Otherwise, resolution of the issue must await summary judgment, after discovery. Particularly because discovery is already well underway in this case, and because inclusion of the FDCPA claim will not appreciably broaden the scope of discovery in any event, I will deny the Motion to Strike as to Count VI. Whether Green Tree was a "debt collector" with respect to plaintiff's mortgage can be resolved at the summary judgment stage.

### B. Count VII (Negligence *Per Se*)

Negligence *per se* is a common law doctrine that transforms statutory duties of care into bases for tort liability. The RESTATEMENT (THIRD) OF TORTS § 14 provides the following formulation of the negligence *per se* doctrine: "An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect."

Count VII, which is captioned "Negligence *PerSe* [sic]," is predicated on Green Tree's alleged violation of the FDCPA and the federal "Protecting Tenants in Foreclosure Act." The text of Count VI does not make it entirely clear whether plaintiff invokes the federal Protecting Tenants at Foreclosure Act ("PTFA"), Pub. L. No. 111-22, 123 Stat. 1632, §§ 701 *et seq.* (2009), *as amended by* Pub. L. No. 111-203, 124 Stat. 1376, § 1484 (2010), or its Maryland state-law counterpart, Md. Code (2010 Repl. Vol., 2011 Supp.), § 7-105.6(b)(2) of the Real Property Article ("R.P."). In her Opposition to the Motion to Strike, plaintiff relies on both the federal and state enactments.

As Green Tree correctly points out, Maryland does not recognize the negligence *per se* doctrine, as such.[7] In jurisdictions that recognize negligence *per se*, as the name of the doctrine suggests, when the plaintiff is a member of a class for whose protection a statute was enacted, and the plaintiff is harmed by the defendant's violation of that statute, the defendant's negligence is established *per se*, *i.e.*, as a matter of law. "Maryland is among the minority of states that treat the [statutory] violation simply as evidence of negligence." *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 329, 918 A.2d 1230, 1243 (2007). But, even though Maryland does not apply the doctrine of negligence *per se,* "[t]he standard for establishing a *prima facie* case of negligence in a statutory-based negligence action is different from the general standard for establishing a *prima facie* case of negligence in cases that are not governed by a statute." *Polakoff v. Turner*, 385 Md. 467, 476 n.5, 869 A.2d 837, 843 n.5 (2005). Therefore, although it is perhaps technically incorrect to assert a claim of "negligence *per se*" under Maryland law, this inaccurate verbiage in the caption of the count is not a basis to dismiss an otherwise properly pleaded cause of action for negligence based on an alleged statutory violation.

---

[7] As I explained in my earlier Memorandum Opinion, the state law claims in this diversity case are governed by substantive Maryland law. *See* ECF 16 at 7 n.12.

Under Maryland law, when a plaintiff alleges that a defendant's duty is established by statute, "all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003). Once the statutory violation is shown, "[p]roximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence." *Brown v. Dermer*, 357 Md. 344, 359, 744 A.2d 47, 55 (2000) (internal citations omitted), *overruled in part on other grounds by Brooks*, 378 Md. 70, 835 A.2d 616; *accord Gourdine v. Crews*, 405 Md. 722, 755, 955 A.2d 769, 789 (2008); *Brooks*, 378 Md. at 79, 835 A.2d at 621. If the plaintiff establishes a *prima facie* case, the defendant's negligence becomes a question for the fact finder, which must "evaluate whether the actions taken by the defendant were reasonable under all the circumstances." *Brooks*, 378 Md. at 79, 835 A.2d at 621. *See generally Allen v. Dackman*, 413 Md. 132, 143-44, 991 A.2d 1216, 1222-23 (2010) (discussing standards of liability in negligence actions based on statutory violations); *Rivers v. Hagner Management Corp.*, 182 Md. App. 632, 959 A.2d 110 (2008) (same), *cert. denied*, 407 Md. 276, 964 A.2d 676 (2009).

With respect to the portion of Count VII based on violation of the FDCPA, Green Tree argues that it fails because, as it argued with respect to Count VI, plaintiff fails to state an FDCPA violation. However, as explained, I will not resolve the viability of plaintiff's FDCPA claim at this juncture. Green Tree does not assert any other basis for dismissal of the FDCPA portion of Count VII, other than the argument that Maryland does not recognize the doctrine of

negligence *per se*, already discussed. Neither party has cited any authority specifically addressing whether a negligence claim based on violation of the FDCPA is viable in Maryland. Ordinarily, such a claim would be redundant if, as here, the plaintiff has also asserted a claim arising directly under the FDCPA. Because the negligence claim would not expand the scope of discovery, however, there is no occasion to resolve the viability of an FDCPA-based negligence claim at the pleading stage, especially in the absence of authority or analysis from the parties.

As to the aspect of plaintiff's negligence claim that is based on the PTFA or its state-law counterpart, R.P. § 7-105.6(b)(2), Green Tree argues that such a negligence claim is not viable because plaintiff is not "within the class of persons sought to be protected," *Brown*, 357 Md. at 359, 744 A.2d at 55, by the federal and state enactments.[8] Green Tree may well be correct. Indeed, the very title of the PTFA refers to protecting *tenants* at foreclosure—not to protecting a mortgagor such as plaintiff who, until foreclosure proceedings are consummated, is the tenant's landlord.[9] I need not resolve this issue, however, because even if a violation of the PTFA or R.P. § 7-105.6 could, in theory, support a statutory negligence claim brought by a landlord-

---

[8] Green Tree also argues that the PTFA and R.P. § 7-105.6 do not create private rights of action. However, it is unnecessary to resolve whether either statute otherwise supports a private right of action, because plaintiff has explicitly asserted a negligence claim, and has not attempted to assert a cause of action directly arising under either statute. (In contrast, with respect to the FDCPA, she has asserted both a statutory action and a negligence claim based on the alleged statutory violation.) The existence of an express or implied private right of action is not necessary to a negligence claim based on a statutory violation. As the Maryland Court of Appeals explained in *Bentley v. Carroll*, 355 Md. 312, 326 n.8, 734 A.2d 697, 705 n.8 (1999), "case law governing tort claims in Maryland courts views the rule that the violation of a statute is evidence of negligence strictly as a rule of evidence, and not as a rule of substantive law implying a cause of action within any given statute relied upon for such evidence." Therefore, assertion of such a tort claim does not depend on "implication into the [statute] of a private right of action." *Id.*

[9] Similarly, the caption of R.P. § 7-105.6 refers to "[r]ights and remedies as between purchasers and tenants."

mortgagor, I agree with Green Tree that plaintiff's claim fails because her Amended Complaint does not state a violation of the PTFA or R.P. § 7-105.6.

Both the PTFA and R.P. § 7-105.6 provide that a tenant of residential real property under a "bona fide" lease is ordinarily entitled to occupy the leased premises at least until the expiration of the lease term, despite the sale of the residential property at foreclosure.[10] Thus, as I explained in my prior Memorandum Opinion, if Green Tree's agents had, in fact, evicted plaintiff's tenant by "clear[ing] the tenant's stuff out of the Residence, put[ting] new locks on the doors, and board[ing] up the windows," Amended Complaint ¶ 7, the day after allegedly threatening to do so, such an eviction would have been unlawful for several reasons, including but not limited to violation of the tenant's rights under the PTFA and R.P. § 7-105.6. The tenant's rights aside, according to the allegations in the Amended Complaint, no foreclosure proceedings had even commenced, let alone concluded in a sale of the property, at the time of these alleged threats by Five Brothers' employee. Thus, even if plaintiff had resided at the Property herself, and did not rent it to a tenant, Green Tree would not have been entitled to evict plaintiff at that time because it had no possessory right over the property.

In my earlier Memorandum Opinion, I concluded, taking the facts in the light most favorable to plaintiff, that the alleged threat to evict the tenant constituted an independently "wrongful or unlawful act[]," akin to "'violence or intimidation, defamation, injurious falsehood

---

[10] Under both the PTFA and R.P. § 7-105.6, a "bona fide" lease is defined as one where the tenant is not a child, spouse, or parent of the property owner; that was the result of an arm's length transaction; and that requires receipt of rent that is not substantially below a fair market rent for the property. *See* Pub. L. No. 111-22, 123 Stat. 1632, § 702(b) (2009); R.P. § 7-105.6(b)(1). The federal and state enactments contain an exception permitting a purchaser of residential real property subsequent to a foreclosure sale to terminate the tenancy of a tenant if the purchaser will occupy the property as the purchaser's primary residence. *See* Pub. L. No. 111-22, 123 Stat. 1632, § 702(a)(2)(A); R.P. § 7-105.6(b)(3). The PTFA contains a sunset provision, by which it will expire as of December 31, 2014. *See* Pub. L. No. 111-203, 124 Stat. 1376, § 1484 (2010). However, R.P. § 7-105.6 does not contain a sunset provision.

or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith,'" *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153, 757 A.2d 108, 113 (2000) (citation omitted), so as to satisfy one of the elements of the tort of interference with a business relationship. As the illustrative list in *Berry & Gould* indicates, intimidation and threats to engage in unlawful activity, and not only actual unlawful activity itself, may qualify as "wrongful or unlawful acts" for purposes of the interference tort.

In contrast, a statutory-based negligence action requires the plaintiff to demonstrate a "violation of a statute or ordinance." *Brooks*, *supra*, 378 Md. at 79, 835 A.2d at 621. The Amended Complaint is devoid of any allegation that Green Tree or its agents actually violated the tenant's rights under the PTFA and R.P. § 7-105.6 by dispossessing the tenant of the property. Rather, the Amended Complaint asserts that the tenant and plaintiff agreed to terminate the lease because, in light of the alleged actions of Green Tree and its agents, plaintiff felt she could no longer promise the tenant quiet enjoyment of the property.

Because the Amended Complaint fails to state an actual violation of the PTFA or R.P. § 7-105.6, any negligence claim based on breach of a duty imposed by those statutes is futile. Therefore, I will strike the portion of Count VII that is based on those statutes. In particular, in Paragraph 57 of the Amended Complaint, the words "Protecting Tenants in Foreclosure Act and" are stricken. To that extent, Green Tree's Motion to Strike will be granted

An Order consistent with these rulings follows.


Date:  June 7, 2012                                       /s/
                                                Ellen Lipton Hollander
                                                United States District Judge